B. F. O'BRIEN *v.* THE STATE.

1. BRIBERY.—The payment, or offer of payment, of any money, emolument, or thing of value by any person to a sheriff, or other peace-officer, for the release of any prisoner in the custody of such sheriff or peace-officer, brings the person so offering within the meaning of art. 307 of the Penal Code (Pasc. Dig., art. 1930), defining the offence of bribery.

2. SAME.—If, however, with a view to entrap the defendant, the officer first suggests his willingness to accept a bribe, and thereby originates the criminal intent, the defendant, by acceding, is not brought within the spirit of the said art. 307.

APPEAL from the District Court of Hunt. Tried below before the Hon. J. J. MATHEWS, Special Judge.

The opinion sufficiently states the case.

*Daniel Upthegrove*, for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

ECTOR, P. J. The defendant was indicted at the July term, 1877, of the District Court of Hunt County, for offering a bribe to one John Allen, who is alleged to have been a deputy-sheriff and jailer of Hunt County, in order to procure the escape of John Williams, who was then confined in jail on a charge of murder. At the January term, 1879, of said court, defendant was tried and convicted; from which judgment he has appealed to this court.

The prosecution first proved that N. J. Ross was sheriff of Hunt County at the time the alleged offence was committed; that he appointed John Allen deputy-sheriff and jailer of Hunt County on the 15th of May, 1877, which

position he held about four months, during which time he carried the keys of the jail, and had the control and management of the prisoners confined therein, and stayed at the jail. He had John Williams in jail all the time he acted as jailer, on a charge of murder, as presented by a bill of indictment. The State also read in evidence the said bill of indictment against John Williams, the *capias* issued upon it, and the return of the sheriff thereon; the appointment and oath of office of John Allen as deputy-sheriff and jailer, duly attested. John Allen, a witness for the State, testified that, while he was in charge of the jail of Hunt County, and had John Williams in custody on the charge of murder, the defendant, a cousin by marriage of Williams, knew the above facts, and had been up to see Williams. Defendant afterwards sent word to him (witness), by Taylor Anderson, to meet him at McDougald's field, about half a mile north of the jail, in Hunt County, Texas. He went according to the request, and a few minutes afterwards the defendant came, in company with Taylor Anderson. Here we give the language of this witness: "When we met we began to talk. The subject was some way to get John Williams out of jail. O'Brien told me he would give me either seventy or seventy-two dollars if I would let John Williams out of jail. I refused to do it, and told him to keep his money. He insisted on my taking the money then, and said he had it in his possession. There was a good deal said about getting John Williams out of jail; the conversation lasted about ten or fifteen minutes."

Taylor Anderson, the next witness introduced on the part of the State, testified that he was present and heard the conversation between the defendant and John Allen, near the corner of McDougald's field. "Don't know who spoke first; the subject of the conversation was, O'Brien was trying to make some arrangement to get John Williams out of jail. I heard O'Brien tell Allen that he had

seventy dollars in his possession, or that he had seventy dollars for him ; can't say which. Allen did not take the money. I did not see the money. * * * Allen told O'Brien that Williams knew and understood the matter. He also told O'Brien that he would be at the picket gate, and he could get the keys from him by force ; and some thing about Ross being at Rockwall, and Southall out threshing. I don't know whether this was after or before O'Brien told Allen he had the money in his possession. Allen was working to catch O'Brien, and had set a trap for him.''

The indictment in this case was drawn under art. 307 of the Criminal Code (Pasc. Dig., art. 1930). The court, in its charge to the jury, first instructed them : '' If any person shall bribe, or offer to bribe, any sheriff or other peace-officer to permit any prisoner in his custody to escape, he shall be punished by imprisonment for a term not less than two, nor more than five years.

'' 2. By a bribe, as used in the section of our statute, as written in the foregoing charge, is meant any gift, advantage, or emolument bestowed for the purpose of inducing such sheriff or other officer to permit any person in his custody to escape.

'' 3. The word ' sheriff,' as used in this section, and written in first charge, includes the sheriff and his deputies. The word ' peace-officer,' as used in the above section, includes sheriffs, their deputies, jailers, constables, marshals of incorporated towns, and persons specially appointed to execute criminal process. Any person appointed by a sheriff as his deputy, and who accepts of said appointment, and enters upon the duties of the office under that appointment, such person is a deputy-sheriff, or peace-officer, in contemplation of the law, as given in the first charge here given, notwithstanding there may be irregularities in the oath of office of such deputy ; but the deputy must be the same person alleged, and he must be acting for the same principal or sheriff that is alleged in the indictment.

"4. An actual tender of the bribe is not necessary to perfect the crime of offering a bribe, as contemplated by the statute, as given in first charge. Any expression of an ability to produce a bribe, as a gift to an officer to induce him to release a prisoner, is all that is necessary to perfect the crime charged in this bill of indictment.

"5. If any person shall bribe, or offer a bribe to, any sheriff or other peace-officer, although such sheriff or other peace-officer should first offer to be bribed by such person, such bribery, or such offer to be bribed, as the case may be, would nevertheless be a violation of the law, as shown in the first section of this charge, and the officer thus offering to be bribed would not be an accomplice, under our statute, to the crime charged."    *    *    *

We believe the law is correctly stated in the first, second, third, and fourth subdivisions of the charge of the court, but we cannot subscribe to the fifth as a correct enunciation of the law. Where the officer first suggests his willingness to a person to accept a bribe to release a prisoner in his charge, and thereby originates the criminal intent, and apparently joins the defendant in a criminal act first suggested by the officer, merely to entrap the defendant, the case is not within the spirit of said art. 307 of the Criminal Code. The question here presented is one of great difficulty, we are free to admit.

After as careful an examination of the authorities at our command as the time at our command and the pressure of business would allow, we have failed to find any adjudicated case which supports the view of the law expressed by the court in the portion of the charge we are now considering. We are inclined to think that the fifth subdivision of the charge of the court is objectionable as being a charge on the weight of evidence, and as calculated to mislead the jury. *Johnson* v. *The State*, 3 Texas Ct. App. 590; 1 Bishop's Cr. Law, sect. 570.

The defendant asked the court to give certain additional

instructions to the jury; all of which the court refused to give, except the last. Such of them as were correct enunciations of the law, and applicable to the facts proved, had already been substantially given, and the court was not required to repeat them.

Because of the error in the charge of the court, the judgment is reversed and the cause remanded.

*Reversed and remanded.*